ARTMAN *v.* COLLEGE HEIGHTS MOBILE PARK, INC.

1. APPEAL AND ERROR—UNRAISED ISSUE—REVIEW—MISCARRIAGE OF JUSTICE.

Whether the legislature intended that the trailer coach park act should take over the entire field of regulation and supervision of trailer parks would not be considered on appeal for an appellate court will not review an issue not raised in the lower court unless a miscarriage of justice is apparent (MCLA § 125.1001 *et seq.*).

2. LICENSES—STATUTES—TRAILER PARK ACT—RESIDENTIAL BUILDERS' ACT—CONSTRUCTION.

The Michigan trailer coach park act neither preempts, nor is it inconsistent with the residential builders' act for the trailer coach park act deals with the physical requirements of trailer parks which must be met by trailer park developers and the residential builders' act relates to the qualifications of residential builders and residential maintenance or alteration contractors, regardless of whether they are developers (MCLA §§ 125.1001 *et seq.*, 338.1501 *et seq.*).

3. LICENSES—RESIDENTIAL BUILDERS' ACT—RESIDENTIAL CONTRACTORS—DEFINITION.

A residential maintenance or alteration contractor under the residential builders' act is one involved in the laying of concrete on residential property (MCLA § 338.1502).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 726.
[2, 3] 37 Am Jur, Municipal Corporations §§ 137, 309.
   13 Am Jur 2d, Buildings §§ 1, 2, 12–17.
[4] 13 Am Jur 2d, Buildings §§ 8–11.
[5–10] 13 Am Jur 2d, Buildings §§ 1, 2, 8–11.

4. LICENSES—RESIDENTIAL BUILDERS' ACT—ASPHALT PAVING CON-
TRACTORS—CONSUMERS' RIGHTS.

An asphalt paving contractor working on a trailer coach park
site was required to be licensed under the residential builders'
act even though he was laying asphalt, instead of concrete on
residential property, for consumers' rights under that statute
should not be allowed to revolve around the mere fortuitous
use of the word "asphalt", as opposed to the statutory use
of "concrete", and an impropriety would result from protecting
homeowners from concrete-laying contractors, but not from
asphalt paving contractors who are performing the same
function (MCLA § 338.1502).

5. LICENSES—RESIDENTIAL BUILDERS' ACT—ASPHALT PAVING CON-
TRACTORS—TRAILER HOMES—RESIDENTIAL PROPERTY.

A trailer park or a trailer home is residential property under
the residential builders' act requiring the licensing of residen-
tial maintenance or alteration contractors since the purpose
of that statute is to protect the homeowner-consumer and a
trailer home is no less a home merely because it is mobile,
rather than stationary (MCLA § 338.1502).

6. PROPERTY—RESIDENTIAL—TRAILER PARKS.

Modern trailer parks, with modern living accommodations, should
be classified as dwellings or residences.

7. STATUTES—CONSTRUCTION.

The Michigan Corporation and Securities Commission, which
administers the residential builders act, specifically requires
the licensing of asphalt paving contractors under that act and
this licensing requirement, although not judicially controlling,
is extremely persuasive for the construction given to a stat-
ute by those charged with the duty of executing it is always
entitled to the most respectful consideration and that con-
struction ought not to be overruled without cogent reasons
(MCLA §§ 338.1502, 338.1504).

8. LICENSES—RESIDENTIAL BUILDERS' ACT—ASPHALT PAVING CON-
TRACTORS—CRITERION FOR STATUTORY COVERAGE.

Plaintiff, an asphalt paving contractor working on a trailer
coach park site, was required to be licensed under the residen-
tial builders' act for the important criterion for licensing
under that statute is not the existence or type of structure
but rather the nature of its occupancy (MCLA §§ 338.1502,
338.1504).

9. Licenses—Residential Builders' Act—Purpose.
> The residential builders' act is essentially a consumer protection measure (MCLA § 338.1501 *et seq.*).

10. Licenses—Residential, Commercial Contractors—Homeowners—Trailer Park Occupants.
> The term "homeowners", as used in a statute licensing building and trade contractors who concern themselves with residential, or residential and commercial structures, includes the owners of individual residences or combined residential and commercial structures, and, by analogy, the owners of mobile trailers in a trailer park.

Appeal from Wayne, Carl M. Weideman, J.   Submitted Division 1 October 8, 1969, at Detroit.   (Docket No. 6,192.)   Decided November 25, 1969.

Complaint by Michael Artman against College Heights Mobile Park, Inc., a Michigan corporation, for breach of contract.   Counterclaim for breach of contract.   Summary judgment for defendant.   Plaintiff appeals.   Affirmed.

*Hyman, Gurwin, Nachman & Friedman* (*Lawrence Halpern,* of counsel), for plaintiff.

*O'Leary, Murphy, Fregolle, Kargenian, Berg & Bennett,* for defendant.

Before: Fitzgerald, P. J., and McGregor and V. J. Brennan, JJ.

McGregor, J.   Plaintiff-appellant is an asphalt paving contractor who, in 1965, contracted with defendant, a mobile home park developer, to pave defendant's proposed trailer park.   Plaintiff instituted suit in the Wayne county circuit court, in 1967, alleging that defendant had failed to pay plaintiff approximately $3,700.   Defendant counterclaimed

for breach of contract, claiming damages of $6,000.
Defendant also filed a motion for summary judg-
ment, pursuant to GCR 1963, 117.2, contending that
plaintiff was not licensed by the state, as is required
by the residential builders' act. MCLA § 338.1501
*et seq.* (Stat Ann 1968 Cum Supp § 18.86[101] *et
seq.*). Plaintiff admitted that he was not licensed,
but claimed that he is not required to be. The mo-
tion for summary judgment was granted by the trial
judge without acting on defendant's counterclaim
for $6,000 damages. Plaintiff raises several issues
on appeal, which will be dealt with *seriatim.*

It is plaintiff's basic contention that he, as an
asphalt paving company, working on a trailer park,
is not subject to the residential builders' act. He
alleges that he does not come within the purview of
the act for several reasons. Plaintiff argues that
he is regulated by the Michigan trailer coach park
act (MCLA § 125.1001 *et seq.* [Stat Ann 1961 Rev
and 1969 Cum Supp § 5.278(31) *et seq.*]), which pre-
empts the residenital builders' act. Plaintiff states
that the trailer coach park act was intended to take
over the entire field of regulation and supervision of
trailer parks. He cites as support *Richards* v. *City
of Pontiac* (1943), 305 Mich 666; *Moorman* v. *State
Health Commissioner* (1966), 2 Mich App 446; and
*Gust* v. *Township of Canton* (1963), 337 Mich 137.
The plaintiff did not raise this issue in the lower
court. This Court will not review the matter, unless
a miscarriage of justice is apparent. *Snider* v. *Dunn*
(1968), 11 Mich App 39. Assuming, however, that
this issue were raised, plaintiff incorrectly asserts
that the trailer park act and the residential builders'
act are inconsistent. It is obvious that the trailer
park act deals with the physical requirements of a
trailer park, which must be met by a trailer park
developer. The residential builders' act deals with

the qualifications of residential builders and residential maintenance or alteration contractors, regardless of whether they are developers. The Court concludes that, whenever two statutes may be reconciled, both must stand. *Valentine* v. *Redford Township Supervisor* (1963), 371 Mich 138.

It is appellant's second assertion that the residential builders' act does not require the licensing of asphalt pavers working on a trailer park site. He contends that the definitional sections[1] of that act do not mention trailers, trailer parks, or asphalt pavers of trailer parks, and that, since the legislature did not specifically enumerate trailer parks or asphalt pavers, the legislative intent was to exclude them from the scope of that act.

An examination of the act reveals that one is considered a "residential maintenance or alteration contractor" if one is involved in the "laying of concrete on residential property." Although the facts show that plaintiff was laying asphalt and not concrete, it is obvious that asphalt may be used instead of, or in addition to, concrete. The rights of consumers will not be allowed to revolve around the mere fortuitous use of the word "asphalt" as opposed to "concrete." The Court notes the impropriety which would result from protecting the homeowner from

---

[1] MCLA § 338.1502 (Stat Ann 1965 Cum Supp § 18.86[102]) Definitions. Sec. 2. "As used in this act:    *  *  *    (c) 'Residential maintenance and alteration contractor' means any person who, for a fixed sum, price, fee, percentage, valuable consideration or other compensation, other than wages, undertakes with another for the repair, alteration or any addition to, substraction from, *improvement of,* movement of, wrecking of or demolition of *a residential structure or combination of residential and commercial structure,* or building of a garage, *or laying of concrete on residential property,* except for his own use and occupancy. The provisions of this act shall not be construed to prevent a duly licensed residential maintenance and alteration contractor from constructing an addition to an existing residential structure, or any other structure accessory to an existing residential structure." (Emphasis added.)

concrete layers but not from asphalt pavers, per-
forming the same function.

Plaintiff also asserts that a trailer park or a trail-
er home should not be considered "residential prop-
erty." If we were to accept this argument, this
Court would be diametrically opposed to the avowed
purpose of the statute, which is to protect the home-
owner-consumer. *Tracer* v. *Bushre* (1968), 381 Mich
282. A trailer home is no less a home because it is
mobile; it is as much a home or residence as one
which is stationary.

"Modern trailer parks afford modern living accom-
modations for many of the families in America to-
day, and should not be classified other than dwellings
or residences." *Land* v. *City of Grandville* (1966),
2 Mich App 681, 696, 697.

In addition, the commission[2] which administers
this act specifically requires the licensing of asphalt
paving contractors under this act. Although not
controlling, this is extremely persuasive.

' " 'The construction given to a statute by those
charged with the duty of executing it is always en-
titled to the most respectful consideration and ought
not be overruled without cogent reasons.' " ' *Ma-
greta* v. *Ambassador Steel Company* (1968), 380
Mich 514.

This Court concludes that plaintiff is includable
as a residential maintenance and alteration contrac-
tor, involved in "laying of concrete on residential
property." Assuming, however, that plaintiff were
not properly within the above provision, he also is
includable as a residential maintenance or alteration
contractor, by means either of performing the "alter-
ation or any addition to * * * improvement of

---

[2] Originally the Corporation and Securities Commission, now the
Residential Builders' and Maintenance and Alteration Contractors'
Board and the Department of Licensing and Regulation—REPORTER.

* * * a residential structure * * * " Plaintiff raises the argument to support his exclusion from the residential builders' act that the occupation or trade must be performed on or appurtenant to a "structure." Plaintiff argues that the statutory definitions, "residential builder" and "residential maintenance or alteration contractor" both refer to a party who is working on a "residential structure or combination of residential and commercial structure * * * " He reasons that, since he did not work on a "structure" but only on land on which there were no structures, he is not properly includable within the statute. The Court's examination of MCLA §§ 338.1501–338.1504, indicates that the work need not necessarily be performed on a "structure."[3] The statute currently includes "swimming pools, concrete work, and masonry work." From this, the Court concludes that the important criterion for coverage by the statute is not the existence or type of structure, but rather the nature of its occupancy. This interpretation is in harmony with that of the Supreme Court, that the residential builders act is essentially a "consumer protection measure." *Tracer* v. *Bushre, supra.*

Our legislature, at least as long ago as 1953, has mandated the licensing of builders and trade contractors who concern themselves not only with a

---

[3] The commission, upon application, may issue a residential maintenance and alteration contractor's license to any applicant who, upon written examination, shall qualify therefor, which shall authorize the licensee according to his qualifications, crafts and trades to engage in the activities of a residential maintenance and alteration contractor. Licenses shall include the *following crafts and trades, but not be limited thereto: Carpentry, concrete work, electrical work, garage building, swimming pools, waterproofing basements, excavation and sewer installation, heating and air conditioning installation, insulation work, lathing, masonry work, painting and decorating, plastering, plumbing work, roofing and siding, screens and storm sash installation, sheet metal work, tile and marble work, house moving and raising and house wrecking.*" (Emphasis supplied.) MCLA 1970 Cum Supp § 338.1504, Stat Ann 1970 Cum Supp § 18.86 (101).

residential structure but any combination of residential and commercial structures as well. PA 1953, No 208, § 2(b) and 2(c), and the current PA 1965, No 383, § 2(b) and 2(c). The Michigan Supreme Court, in *Alexander* v. *Neal* (1961), 364 Mich 485, had an occasion to examine and analyze this prior statute. In considering the then existing pertinent provisions of PA 1953, No 208, Justice TALBOT SMITH said (pp 489, 490), responding to the argument that apartment dwellers were not home owners:

"Thus it is clear from the definitions employed in the act itself that the 'home owners' here sought to be protected are not simply the owners of the traditional vine-covered cottages, but comprehend as well the owners of today's combined residential and commercial structures."

The structure in question in the *Neal* case was an apartment house building, in which the first floor was rented by stores. Analogously, a trailer park ought to be included.

For the reasons herein stated, the trial court's decision is affirmed. Having decided the above issues, as we do, other alleged errors are rendered moot. Costs to appellee.

All concurred.