REYNOLDS v COLLEGE PARK CORPORATION

1. LICENSES—RESIDENTIAL BUILDERS—SUIT FOR COMPENSATION—STATUTES.

No person engaged in the business or acting in the capacity of a residential builder may bring or maintain any action for the collection of compensation for performance of any act or contract for which a license is required without alleging and proving that he was duly licensed (MCLA 338.1516).

2. PLEADING—FAILURE TO STATE CLAIM—WAIVER—COURT RULES.

Failure to raise a defense in a responsive pleading does not waive the defense where the defense is that the plaintiff has failed to state a claim upon which relief can be granted (GCR 1963, 111.3[2]).

3. TRIAL—DEFENSES—FAILURE TO STATE CLAIM—WAIVER—LICENSES—RESIDENTIAL BUILDER'S LICENSE—STATUTES—COURT RULES.

A defendant's failure to raise a particular defense until closing argument, in a suit for compensation for labor and services performed in constructing a mobile home park, did not waive the defense where the defense was that the plaintiff lacked a residential builder's license as required by statute; the statute sets up prerequisites for recovery, and the failure of plaintiff to meet the prerequisite allegedly constitutes a failure to state a claim upon which relief can be granted (MCLA 338.1516, GCR 1963 111.3[2]).

4. LICENSES—RESIDENTIAL BUILDER'S ACT—UNLICENSED BUILDER—MOBILE HOMES—STATUTES—CONSUMER PROTECTION.

The residential builder's act does not apply to an unlicensed builder, in his suit against an unlicensed developer for services rendered in developing a mobile home park, where the developer was required to be licensed by the act, the developer was

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 13 Am Jur 2d, Building and Construction Contracts §§ 130, 131.
Validity, construction, and application of regulations of business of building construction contractors. 118 ALR 676.

[2, 3, 5] 61 Am Jur 2d, Pleading § 71 et seq.

[4] 73 Am Jur 2d, Statutes §§ 196, 272, 275.

not within the class of persons the act was designed to protect, and to hold otherwise would divert the act's consumer protection thrust; therefore, the penalty provisions of the act do not apply to bar the unlicensed builder's suit for compensation (MCLA 338.1503, 338.1516).

5. PLEADING—COMPLAINT—AMENDMENT—CONTRACTS—QUANTUM MERUIT—COURT RULES.

Consideration by a trial court of a plaintiff-subcontractor's claim in *quantum meruit* was proper, after the court found no express contract between plaintiff and defendant where the plaintiff's amended complaint reasonably appears to state a cause of action in *quantum meruit,* the amended complaint was sufficient to inform the adverse party of the nature of the cause of action, the trial court *sua sponte* allowed amendment of the complaint, and the defendant made no allegation that he was prejudiced by the amendment (GCR 1963, 111.1[1]).

Appeal from Wayne, George Bowles, J. Submitted June 4, 1975, at Detroit. (Docket No. 21151.) Decided August 13, 1975. Leave to appeal denied, 395 Mich —.

Complaint by Stanley J. Reynolds against College Park Corporation for compensation for plaintiff's labor and services. Judgment for plaintiff. Defendant appeals. Affirmed.

*Christy & Robbins,* for plaintiff.

*O'Leary, Murphy, Fregolle, Kargenian, Berg, Bennett & Reebel,* for defendant.

Before: DANHOF, P. J., and R. B. BURNS and R. M. MAHER, JJ.

R. M. MAHER, J. Plaintiff and several other individuals entered into a joint venture to develop a mobile home park. In exchange for their services, each was to receive a certain proprietary interest. From this joint venture came defendant, College Park Corporation. Plaintiff, a stockholder and director of defendant corporation, disposed of his

interest therein and brought this suit for compensation from defendant for his labor and services in the construction and development of the mobile home sites. Although the joint venture agreement provided for a set proprietary interest in exchange for services, and this agreement continued after incorporation, plaintiff claimed that the corporation was not a party to the agreement and also that the services for which he claims compensation were over and above those contemplated in the joint venture agreement. When plaintiff requested payment for the service, he was told by another joint venturer, in the presence of others, that he would be paid. Although the trial court found that plaintiff did not have a claim under an express contract with defendant, plaintiff was awarded judgment in the sum of $34,500 on the basis of unjust enrichment.

Defendant, in appealing the trial court's judgment, brings us three issues, none of which directly questions the validity of plaintiff's claim of unjust enrichment. The first is whether the defense that plaintiff lacks a residential builder's license may be brought up at any time during the proceedings. In closing argument, defendant raised for the first time that plaintiff lacked a residential builder's license, and that MCLA 338.1516; MSA 18.86(116), therefore precluded any recovery by plaintiff. The court considered this defense as coming too late and rejected it. We must disagree with the trial court on the question of timeliness. The pertinent language of MCLA 338.1516; MSA 18.86(116) reads:

"No person engaged in the business or acting in the capacity of a residential builder and/or residential maintenance and alteration contractor may bring or maintain any action in any court of this state for the

collection of compensation for performance of any act or contract for which a license is required by this act without alleging and proving that he was duly licensed under the act at all times during the performance of such act or contract".

Rather than establishing an affirmative defense which would be waived if not timely asserted, the statute appears to set prerequisites for recovery. In other words, objection to lack of an opposing party's license would come under GCR 1963, 111.3(2), failure to state a claim upon which relief can be granted, and would not be waived if not asserted in defendant's responsive pleading.

Despite the trial court's incorrect characterization of the defense, we nevertheless agree that defendant cannot avail himself of MCLA 338.1516; MSA 18.86(116). That section is the penalty provision of the residential builders' act, MCLA 338.1501 *et seq.;* MSA 18.86(101) et seq. Besides prohibiting suits by noncomplying persons, that portion of the act contains criminal sanctions for persons violating the various provisions of the act and courts have been most willing to apply the prohibitions against recovery contained in the act and its predecessors when claims of unlicensed builders have been before them. See *Alexander v Neal,* 364 Mich 485; 110 NW2d 797 (1961), *Weaver v Haney,* 32 Mich App 424; 188 NW2d 905 (1971).

In *Alexander v Neal, supra,* at 487, the Supreme Court found the same prohibition in this state's former act to be a proper exercise of the police power "to protect the public from incompetent, inexperienced, and fly-by-night contractors". The present act begins with a similar statement of purpose: "In order to safeguard and protect home owners and persons undertaking to become home owners * * * ". MCLA 338.1501; MSA 18.86(101).

As the Supreme Court stated in *Tracer v Bushre,* 381 Mich 282, 290; 160 NW2d 898 (1968): "The residential builders law is essentially a consumer protection measure".

This notion of consumer protection can be found in *Brummel v Whelpley,* 46 Mich App 93; 207 NW2d 399 (1973). In *Brummel,* plaintiff was a licensed real estate broker and sued defendants for specific performance on the sale of a lot and house. The lot was owned by plaintiff, and he had a house built according to agreed upon specifications by a licensed builder. The Court, taking note of the fact that the broker was the only person defendants could look to for performance and that he did not come under any of the statute's exemptions, found the contract to be void and unenforceable because the real estate broker lacked a residential builder's license.

In the dispute before us, however, the person[1] required by the act to be licensed was defendant, not plaintiff. As developer of the mobile home park, defendant fits within the statute's definition of "residential builder"[2] much better than does

---

[1] MCLA 338.1502; MSA 18.86(102): "As used in this act:

"(a) 'Persons' means an individual, firm, partnership, association, copartnership, corporation, common law trusts, or other organization or a combination thereof."

[2] MCLA 338.1502(b); MSA 18.86(102)(b): " 'Residential builder' means a person engaged in the construction of residential structures or a combination of residential and commercial structures who, for a fixed sum, price, fee, percentage, valuable consideration, or other compensation, other than wages for his own personal labor only, undertakes with another or offers to undertake or purports to have the capacity to undertake with another for the erection, construction, replacement, repair, alteration, or an addition to, subtraction from, improvement, movement of, wrecking of, or demolition of, a residential structure or combination of residential and commercial structure, or a person who manufactures, assembles, constructs, deals in, or distributes residential or combination residential and commercial structures which are prefabricated, preassembled, precut, packaged, or shell housing, or a person who erects a residential structure or combination of residential and commercial structure except for his own use and occupancy on his own property."

plaintiff. As this Court stated in *King Arthur's Court v Badgley,* 47 Mich App 222, 225; 209 NW2d 488 (1973), analogizing from the situation in *Brummel:* "it is at least arguable that, if the act applies, plaintiff as owner-developer of the park was also required under the act to be licensed". In *King Arthur's Court,* the opinion goes on to state that had the plaintiff-developer been licensed, the defendant-contractor would have been exempted by MCLA 338.1503(d); MSA 18.86(103)(d),[3] from compliance with the act. In view of the close relationship between plaintiff and defendant in this case, we are willing to hold that plaintiff is exempted from the act, even though defendant was not licensed.[4] Otherwise, defendant would divert the statute's thrust of consumer protection and use it as a shield against worthy, nonconsumer claims. Like the developer in *Brummel,* it is to defendant that the ultimate occupiers of the park will look, not plaintiff.

We are not faced with facts similar to those of *Lake States Engineering Corp v Lawrence Seaway Corp,* 15 Mich App 637; 167 NW2d 320 (1969). There the Court allowed an unlicensed contractor to sue its subcontractor for nonperformance despite the Court's observation that contractor's unlawful building operations were in contravention of MCLA 338.1501; MSA 18.86(101). The Court, however, quoting *Cashin v Pliter,* 168 Mich 386, 390–91; 134 NW 482 (1912), did make the following comment:

---

[3] MCLA 338.1503; MSA 18.86(103): "This act shall not apply to:
* * * (d) Any person other than the salesman who shall engage or be engaged solely in the business of performing work and services under contract with a residential builder or a residential maintenance and alteration contractor licensed under this act."

[4] We would obviously be less inclined to find an exemption for the subcontractor of an unlicensed builder where a dispute arose between the subcontractor and the person the act was designed to protect, the consumer-homeowner.

" 'the court should carefully scrutinize the particular statute under advisement, for the purpose of ascertaining, from the subject-matter and language used, the object for which it was enacted and the intent of its makers, to the end that such intent may be rendered effectual and the indicated purpose accomplished' ". 15 Mich App at 656–657.

Because our ruling in this case, that the residential builders' act does not apply to plaintiff, may seem to conflict with this Court's opinion in *Artman v College Heights Mobile Park, Inc,* 20 Mich App 193; 173 NW2d 833 (1969), a brief reexamination of that case is in order. Plaintiff in *Artman* was an asphalt paving contractor who sought recovery for work performed on a mobile home site. In contesting the trial court's award of summary judgment for defendant on the basis of plaintiff's lack of a builder's license, plaintiff raised four issues. This Court first rejected plaintiff's contention that regulation under Michigan's trailer coach park act preempted the residential builders' act in the field of mobile home parks. Next, the Court found sufficient similarity between the laying of concrete, specifically mentioned in the act, and asphalt paving, to reject plaintiff's argument that the work he performed was not covered by the act. "The Court notes the impropriety which would result from protecting the *homeowner* from concrete layers but not from asphalt pavers, performing the same function." (Emphasis added.) 20 Mich App at 197–198. This Court was also unconvinced by plaintiff's argument that a trailer park or a trailer home was not "residential property". "If we were to accept this argument, this Court would be diametrically opposed to the avowed purpose of the statute, which is to protect the homeowner-consumer. *Tracer v Bushre,* 381 Mich 282 (1968)." 20 Mich App at 198. Finally, as to plaintiff's claim that he was not performing work on a "structure",

and therefore was not within the statutory defini-
tions of "residential builder" and "residential
maintenance or alteration contractor", the Court
stated that "the important criterion for coverage
by the statute is not the existence or type of
structure, but rather the nature of its occupancy".
20 Mich App at 199.

The above quotations indicate this Court's inten-
tion to bring work performed on mobile home
parks within the purview of the act because of
their residential character. Nothing in our ruling
on the relationship between plaintiff and defend-
ant corporation in this case is in conflict with this
view. In fact, we feel our decision supports the
consumer orientation of the statute emphasized in
*Artman.*

Next to be considered is whether the trial court
should have allowed recovery on a *quantum me-
ruit* theory after it found no express contract and
no amendment to the pleadings was made. There
is no basis for defendant's contention. The third
paragraph of plaintiff's amended complaint reason-
ably appears to state a cause of action in *quantum
meruit;* it was certainly enough "to inform the
adverse party of the nature of the cause he is
called upon to defend". GCR 1963, 111.1(1). Even if
the pleadings did not sufficiently inform defendant
of the claim in *quantum meruit* against him, and
it is extremely doubtful that it did not, the trial
court *sua sponte* allowed amendment. Defendant
makes no allegations that he was "prejudiced", as
*Ben P Fyke & Sons v Gunter Co,* 390 Mich 649;
213 NW2d 134 (1973), requires that term to be
used. We therefore find the trial court's considera-
tion of plaintiff's claim in *quantum meruit* proper.

Lastly, we must consider the propriety of allow-
ing the testimony of plaintiff's rebuttal witness on

the value of plaintiff's services. The admission of this testimony, if it was error, was harmless. While plaintiff stated that the value of his services was $200 per unit, the expert witness called by plaintiff set the value at $150 per unit. Defendant, for obvious reasons, did not object to this testimony and only when the trial court ruled, on the basis of the witness' testimony, that plaintiff's services would be valued at $150 did the defendant complain.

Affirmed. Costs to plaintiff.